UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUINTELL ETHERIDGE,            )
                              )
        Plaintiff,            )
                              )
    v.                        )    Civil Action No. 09-1923 (GK)
                              )
FEDCHOICE FEDERAL CREDIT      )
UNION,                        )
        Defendant.            )
_____)

<u>MEMORANDUM OPINION</u>

Plaintiff, Quintell Etheridge, brings this action against Defendant FedChoice Federal Credit Union ("FedChoice"), her former employer, for employment discrimination and unlawful termination based upon a claimed disability. Plaintiff alleges violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>, and the Family and Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601 <u>et seq.</u>, breach of contract, and wrongful termination in violation of public policy. This matter is presently before the Court on Defendant's Motion for Summary Judgment on all Plaintiff's claims. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion for Summary Judgment is **granted in its entirety**.

## I.  Background[1]

From 2001 until her termination on March 28, 2008, Plaintiff Quintell Etheridge was a Financial Services Representative at FedChoice, performing duties as a bank teller at a branch located in the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Plaintiff's Opposition to Defendant's Motion for Summary Judgment, 1, 6 ("Plaintiff's Opp'n")(Oct. 7, 2010) [Dkt. No. 19-1]. As a Financial Services Representative, Plaintiff's major duties included processing "all transactions for members, including deposits, withdrawals, loan payments, cash advances and transfers," "[p]repar[ing] individual daily settlement of teller cash and other transactions bringing cash drawer and settlement sheets into balance," "[c]heck[ing] and assembl[ing] all supplies in the branch," and "[s]tock[ing]/replac[ing] forms, brochures, etc. as needed." Plaintiff Ex. 2 - Federal Credit Union Position Description (Oct. 7, 2010) [Dkt. No. 19-2]. In addition, as a condition of her employment, Plaintiff was required to lift a "minimum [of] 25 lbs (i.e. coinage & trays)" and to travel occasionally. Id.

It is undisputed that, although provided with a chair, Plaintiff was regularly on her feet and required to walk throughout the course of her workday. Compl. ¶ 7. Since the summer of 2007,

---

[1]  The facts set forth herein are drawn from the parties' statements of material facts submitted pursuant to Local Rule 7(h), the briefs, and the evidence in the record.

this included an approximate 1/2 mile daily walk from the nearest parking garage where Plaintiff, who commuted from her residence in Maryland, parked her car to the ATF building where she worked. Plaintiff's Opp'n 1-2.

According to Plaintiff and undisputed by Defendant, in August 2007, Plaintiff began experiencing severe pain in her right foot[2] with swelling and bruising developing in that area sometime in September 2007. Plaintiff's Statement of Material Facts in Dispute and Counter-Statement of the Facts in Dispute ¶ 19 ("Plaintiff's Stmt. of Facts") (Oct. 7, 2010) [Dkt. No. 19]. On November 21, 2007, Plaintiff consulted a podiatrist, Dr. Dorothy Powell, because her pain had become more pronounced. Nov. 21, 2007 Medical Evaluation of Quintell Etheridge; Defendant's Statement of Undisputed Material Facts in Relation to Its Motion for Summary Judgment ¶ 2 ("Def.'s Stmt. of Facts") (Sept. 3, 2010) [Dkt. No. 16]. At this appointment, Dr. Powell diagnosed Plaintiff with "plantar fasciitis" or "heel spurs." Nov. 21, 2007 Medical Evaluation of Quintell Etheridge.

On November 21, 2007, Plaintiff sought and received FMLA leave from Defendant because of this diagnosis. Plaintiff's Stmt. of

_____

[2] Although Plaintiff's pleadings describe her medical impairment as affecting her left foot, reports from Plaintiff's treating physician make clear that the ailment in fact impacted Plaintiff's right foot. See Plaintiff Ex. 4 – Nov. 21, 2007 Medical Evaluation of Quintell Etheridge, 1 ("Nov. 21, 2007 Medical Evaluation of Quintell Etheridge")(Oct. 7, 2010) [Dkt. No. 19-2].

Facts ¶¶ 23-24. Plaintiff does not dispute that, at the time of requesting her leave, Defendant provided her with written notice of her FMLA rights, including that she was eligible for FMLA leave of up to sixteen weeks under District of Columbia law,[3] and notified her that her leave would be counted against this entitlement. Def.'s Stmt. of Facts ¶ 4; Plaintiff's Stmt. of Facts ¶ 4.

Initially, Plaintiff's FMLA leave was scheduled to last from November 21, 2007 until December 3, 2007. Defendant's Motion for Summary Judgment, 1 ("Def.'s Mot.") (Sept. 3, 2010) [Dkt. No. 16]. However, Plaintiff alleges that her symptoms worsened so much during this period that she was unable to walk "other than to take care for her personal daily care and to go to her medical appointments." Plaintiff's Stmt. of Facts ¶ 27. Plaintiff subsequently submitted a work excuse note from Dr. Powell to extend her FMLA leave from December 3, 2007 to January 14, 2008, which was granted by Defendant. Plaintiff Ex. 4 – Nov. 30, 2007 Work Excuse Note (Oct. 7, 2010) [Dkt. No. 19-2]; Def.'s Stmt. of Facts ¶ 5. On January 11, 2008, Plaintiff submitted another work excuse note to Defendant from Dr. Powell, requesting an extension of her FMLA leave to February 1, 2011, which Defendant again granted. Plaintiff Ex. 4 – Jan. 11, 2008 Work Excuse Note (Oct. 7, 2010) [Dkt. No. 19-2]; Def.'s Stmt. of Facts ¶ 5.

---

[3] Although the federal FMLA statute provides for twelve weeks of FMLA leave, the D.C. FMLA provides for sixteen weeks of leave. D.C. Code § 32-503.

Plaintiff claims, and Defendant does not dispute, that by late January or sometime in February 2008, Plaintiff's symptoms improved slightly, although she still "could not walk long distances or stay on her feet for any significant length of time." Plaintiff's Stmt. of Facts ¶ 28.

At some point during January/February 2008, Plaintiff contacted her supervisor at FedChoice, Charlene Backstrom, to request a transfer to FedChoice's headquarters in Lanham, Maryland. Id. ¶ 29. Plaintiff believed that tellers at the Lanham headquarters performed more limited duties than at the ATF branch, and engaged in fewer weight-bearing activities. Compl. ¶ 9. This belief, combined with the fact that the Lanham headquarters had a large parking lot with handicap parking spaces adjacent to the front door, led Plaintiff to believe that a transfer to Lanham would allow her to fully perform her work duties. Plaintiff's Stmt. of Facts ¶ 29. Although Plaintiff does not provide specific evidence regarding the statements made during this conversation with her supervisor, it is undisputed that Plaintiff requested a transfer to the Lanham headquarters, that Plaintiff's supervisor passed her request to Susan Barnes, the head of FedChoice's human resources department, and that the request for a transfer was denied. Id. ¶¶ 31-33.

Plaintiff submitted further work excuse notes to Defendant to extend her FMLA leave from February 1, 2008 to March 3, 2008 and

then to March 11, 2008, all of which Defendant granted. Plaintiff Ex. 4 – Feb. 1, 2008 and Feb. 27, 2008 Work Excuse Notes (Oct. 7, 2010) [Dkt. No. 19-2]; Def.'s Stmt. of Facts ¶ 5.[4]

With Plaintiff's sixteen weeks of FMLA leave set to expire on March 12, 2008, Plaintiff received a letter dated March 10, 2008 from Tammeca Riley, an employee in FedChoice's human resources department. Plaintiff Ex. 5 - Mar. 10, 2008 Fed Choice Letter to Quintell Etheridge ("Mar. 10, 2008 Fed Choice Letter to Quintell Etheridge") (Oct. 7, 2010) [Dkt. No. 19-3]; Plaintiff's Stmt. of Facts ¶ 39. The letter requested additional information regarding Plaintiff's medical condition, including the date on which Plaintiff would return to work and any work restrictions she would have. Mar. 10, 2008 Fed Choice Letter to Quintell Etheridge. During a telephone conversation with Plaintiff on approximately March 12, 2008, Ms. Riley again requested information as to when Plaintiff could return to work. Plaintiff's Stmt. of Facts ¶ 40. Plaintiff indicated that her condition was improving, but that she had a surgical consultation on March 18, 2008 and would immediately provide Ms. Riley with the result. Id. At this surgical consult, Plaintiff ultimately chose to forgo surgery, informing Ms. Riley of her decision the next day. Id. ¶ 44.

_____

[4] Although Defendant's motion also indicates that Plaintiff submitted a work excuse note to extend her leave to April 1, 2008, there is no evidence of such a request in the record. Def.'s Mot. 1. As the resolution of this issue is unnecessary for deciding this motion, the Court will disregard this discrepancy.

At an unspecified point during March 2008, FedChoice officials, including Ms. Riley, Ms. Barnes, and FedChoice counsel, met to discuss Plaintiff's leave status. Id. ¶ 43; Plaintiff Ex. 6 - Deposition of Susan Barnes ("Barnes Depo."), Tr. 60:13-61:6 (Oct. 7, 2010) [Dkt. Not. 19-3]. Plaintiff claims and Defendant does not dispute that, in the weeks leading up to the March 12 expiration of her FMLA leave, FedChoice officials did not notify Plaintiff that her leave period was nearing a close and that she risked termination. Id. ¶ 40. However, Plaintiff also does not suggest, nor does the record show, that she provided any specific information to Defendant regarding when she would be returning to work.[5]

On March 27, 2008, Dr. Powell provided a further work excuse note to Defendant, stating that Plaintiff would not be able to perform "normal work activities" until April 11, 2008 and requesting an extension of her leave until that time. Plaintiff Ex. 4 - Mar. 27, 2008 Work Excuse Note ("Mar. 27, 2008 Work Excuse Note") (Oct. 7, 2010) [Dkt. No. 19-2]. The note provided no indication as to when Plaintiff would be returning to work.

On April 1, 2008, Plaintiff learned for the first time, through a telephone conversation with Ms. Riley, that her employment had been terminated as of March 28, 2008, and that Ms.

---

[5] At most, the record indicates that Plaintiff told Ms. Riley that her "return to work depended on how she healed." Plaintiff's Opp'n 4.

Riley had sent her a letter to that effect on March 30, 2008, which Plaintiff subsequently received on April 3, 2008. Plaintiff's Stmt. of Facts ¶ 48. This letter stated, in part:

> I [Ms. Riley] am in receipt of your physician's note dated March 27, 2008. That note states that you will need additional time off and does not indicate when your physician believes that you will be able to return to work. You have been out of work since 11/21/07 and your FMLA leave expired on 3/12/08.
>
> We can no longer hold your job; therefore your employment is terminated effective 3/28/08.

Def. Ex. 5 – Mar. 31, 2008 FedChoice Letter to Quintell Etheridge (Sept. 3, 2010) [Dkt. No. 16-1].

Although the parties dispute the precise date, Plaintiff concedes that she began looking for new work "soon after she was terminated because she needed to work and needed health insurance." Plaintiff's Stmt. of Facts ¶ 50. She did not secure new employment until March 2009. Id. ¶ 54.

On approximately September 17, 2008, Plaintiff filed a complaint against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA. Compl. ¶ 12. On approximately July 13, 2009, Plaintiff received a Right to Sue Letter from the EEOC. Id.

Plaintiff filed the instant Complaint in this Court on October 9, 2009. Defendant moved for summary judgment on all of Plaintiff's claims on September 3, 2010. Plaintiff filed her opposition on October 7, 2010. Defendant filed its Reply on October 18, 2010.

Defendant's Reply Memorandum of Points and Authorities In Support of Its Motion for Summary Judgment ("Def.s' Reply") [Dkt. No. 21].

## II.  Standard of Review

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c), as amended; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, that there is no "genuine" factual dispute and, second, if there is, that it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, 473 F.3d at 333 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

In Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007), the Supreme Court said,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct.

> 1348, 89 L.Ed.2d 538 . . . (1986) (footnote
> omitted). "'[T]he mere existence of <u>some</u>
> alleged factual dispute between the parties
> will not defeat an otherwise properly
> supported motion for summary judgment; the
> requirement is that there be no <u>genuine</u> issue
> of <u>material</u> fact.'"

(quoting <u>Liberty Lobby</u>, 477 U.S. at 247-48) (emphasis in original)."

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 249. In both <u>Liberty Lobby</u> and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150, 120 S. Ct. 2097 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 255.

In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "[t]he non-moving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552, 119 S. Ct. 1545 (1999) (quoting <u>Liberty Lobby</u>, 477 U.S. at 255). The non-movant must, however, "do more than present conclusory allegations . . . [rather] concrete particulars must be presented . . . ." <u>Kalekiristos v. CTS Hotel Mgmt. Corp.</u>, 958 F.

Supp. 641, 645 (D.D.C. 1997) (internal quotations and citation omitted). "To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to an element essential to that party's claim." Arrington, 473 F.3d at 335. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986)."[I]f the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." United States v. Philip Morris USA, 316 F. Supp. 2d 13, 16 (D.D.C. 2004) (quoting Greenberg v. FDA, 803 F.2d 1213, 1216 (D.C. Cir. 1986)).

## III. Analysis

In her Complaint, Plaintiff raises four claims for relief. First, Plaintiff alleges that Defendant violated Title I of the ADA by failing to accommodate her claimed disability. Second, Plaintiff alleges that Defendant's termination of her employment violated the FMLA. Third, Plaintiff claims that her wrongful termination amounted to a violation of public policy, under D.C. common law and the District of Columbia Human Rights Act. Finally, Plaintiff alleges that her termination constituted a breach of an employment contract.

Defendant has moved for summary judgment on all four claims. In her Opposition, Plaintiff voluntarily dismissed her breach of contract claim. Plaintiff's Opp'n 14 n.1. With regard to her claim

for wrongful termination, Plaintiff has failed to present "any significant probative evidence tending to support the complaint" on this issue. <u>Liberty Lobby</u>, 477 U.S. at 256 (internal quotations and citation omitted). Consequently, Defendant's summary judgment motion on this claim is **granted.** <u>Celotex</u>, 477 U.S. at 323-24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . .").

As to her two remaining claims, Plaintiff opposes summary judgment on the grounds that there are material facts that are genuinely in dispute. Plaintiff's Opp'n 9. In the alternative, Plaintiff claims that Defendant's Motion fails, because she has adduced sufficient, uncontested facts to support her ADA and FMLA claims. <u>Id.</u>

## A. There Are No Genuine Issues of Material Fact in Dispute

Despite Plaintiff's claims to the contrary, Defendant has demonstrated that there are no genuine disputes regarding those facts which are relevant to considering Plaintiff's ADA and FMLA claims. Defendant has met its burden on this issue for several reasons.

First, in her Statement of Material Facts in Dispute, Plaintiff agrees with ten out of twelve of Defendant's Statement of Undisputed Material Facts. Specifically, Plaintiff admits that: (1) she sought treatment for ankle, foot, and heel pain on November 21,

2007 and began her medical leave on that date; (2) at the time of requesting her leave, she received written notice from Defendant that she was eligible for FMLA leave, was provided with written notification of her FMLA rights, and was informed that her leave would be counted against her FMLA entitlement; (3) her leave was repeatedly extended from December 2007 through March 2008, and she did not return to work after November 21, 2007; (4) she completed two FMLA certification forms during her leave and received a letter reminding her that FMLA leave and short-term disability benefits run concurrently;[6] (5) she was on leave for a total of sixteen weeks between November 21, 2007 and March 12, 2008; and (6) her employment was terminated by FedChoice, effective March 28, 2008, on the grounds that since her FMLA leave had expired on March 12, 2008, and there was no indication when she would be able to return to work, FedChoice could no longer hold her job open for her. Plaintiff's Stmt. of Facts ¶¶ 1-9,11; Def.'s Stmt. of Facts ¶¶ 1-9, 11.

Second, although Plaintiff denies two of the facts included in Defendant's Statement of Undisputed Material Facts, she fails to demonstrate that a genuine dispute exists as to them. Specifically,

---

[6] Plaintiff herself has provided evidence demonstrating that she received multiple letters from FedChoice reminding her that her FMLA and short-term disability leave were running concurrently. See Plaintiff Ex. 5 - Dec. 5, 2007 and Jan. 24, 2008 FedChoice Letters to Quintell Etheridge ("Dec. 5, 2007 and Jan. 24, 2008 FedChoice Letters to Quintell Etheridge")(Oct. 7, 2010) [Dkt. No. 19-3].

Plaintiff challenges the following two Statements submitted by Defendant: (1) that on March 27, 2008, FedChoice was provided with a work excuse note from Plaintiff's physician, Dr. Powell, stating that Plaintiff was "unable to perform normal work activities and needed to be excused from work until April 11, 2008;" and (2) that Plaintiff "was fit to return to work as a teller by April 14, 2008, and she immediately sought employment as a teller with other credit unions."[7] Def.'s Stmt. of Facts ¶¶ 10,12; Plaintiff's Stmt. of Facts ¶¶ 10,12.

With regard to the March 27, 2008 work excuse note, Plaintiff has failed to explain why she is denying Defendant's Statement of this fact. Plaintiff's Stmt. of Facts ¶ 10. A review of the note, which was submitted as Plaintiff's Ex. 4 and Defendant's Ex. 3, demonstrates that Defendant's description is materially accurate in all respects, and provides a nearly verbatim accounting of the note's contents.[8] Consequently, the Court finds that there is no

---

[7] Plaintiff only denies Defendant's claim that she was fit to return to work on April 14, 2008, and does not challenge the fact that she immediately sought employment as a teller at other credit unions after being fired by FedChoice. Plaintiff's Stmt. of Facts ¶ 12. Plaintiff does, however, argue that she had no choice but to seek employment after her termination as this presented the only means available for her to secure much-needed health insurance. Plaintiff's Opp'n 12.

[8] The work excuse note, in full, is as follows:

To Whom It May Concern:

   Quintell Etheridge is being treated at our office and is
(continued...)

genuine issue of fact with respect to the March 27, 2008 work excuse note.

With respect to the question of Plaintiff's fitness to return to work on April 14, 2008, Plaintiff does not deny that she has given deposition testimony stating she "would have been able to work by April 2008 and, indeed sought work after she was [] fired by defendant . . . ." Plaintiff's Opp'n 12. Instead, Plaintiff attempts to challenge her own testimony by claiming that there is conflicting record evidence that her doctor would have allowed her to return to work in April. Id. However, she provides no evidence of such conflicting record evidence. Thus, Plaintiff has failed to demonstrate that a genuine issue exists as to this issue.[9]

Finally, in a further attempt to demonstrate the existence of

_____

[8](...continued)
unable to perform normal work activities at this time.

Please excuse Mrs. Etheridge from work during the recovery period beginning on 03/27/08 until 04/11/08.

If there are any questions, please contact this office.

Mar. 27, 2008 Work Excuse Note.

[9] Although there is no genuine dispute that Plaintiff's medical impairment lasted until, at most, some time in April 2008, the parties do present a genuine issue of fact as to whether Plaintiff's impairment began in August/September 2007 (when she first began to experience pain) or November 2007 (when she first requested her FMLA leave). See Def.'s Reply 4-5 & n.1. However, as demonstrated, infra, whether Plaintiff's impairment lasted 8 months (using the August/September start date) or 5 months (using the November start date) is not "material," since the resolution of this dispute does not impact the outcome of Plaintiff's ADA and FMLA claims. Liberty Lobby, 477 U.S. at 248.

-15-

genuine issues of material fact, Plaintiff presents additional facts in her Counter-Statement of The Facts in Dispute. These additional facts are, however, either irrelevant, additions or repetitions of Defendant's undisputed material facts, or relevant to the case but unchallenged by the Defendant. See Plaintiff's Stmt. of Facts ¶¶ 13-54.

Consequently, this Court concludes that there are no genuine issues of material fact preventing resolution of Plaintiff's ADA and FMLA claims. The Court must now consider whether Defendant is entitled, as a matter of law, to summary judgment on these claims.

**B.  Plaintiff's ADA Claim**

Plaintiff argues that Defendant violated the ADA because it refused to provide her with a reasonable accommodation for her "long-term medical impairment." Plaintiff's Opp'n 9. In response, Defendant argues that Plaintiff's impairment did not constitute a "disability" under the ADA, as it was "temporary" in nature and therefore was not protected by the statute. Def.'s Mot. 3.

Under Title 1 of the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a).[10] Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

To make out a prima facie case of discrimination for failure to reasonably accommodate, plaintiff must demonstrate by a preponderance of the evidence:(1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of her job; and (4) that the employer refused to make such accommodations. Lytes v. D.C. Water and Sewer Auth., 527 F. Supp. 2d 52, 60 (D.D.C. 2007), aff'd, 572 F.3d 936 (D.C. Cir. 2009).

### 1. Plaintiff's Medical Impairment Does Not Constitute a Disability Under the ADA

The parties' dispute centers around the first prong of the four-part test,[11] namely the threshold issue of whether Plaintiff's

---

[10] All references to the ADA are made to the version of the statute in effect before January 1, 2009. As discussed in footnote 12, infra, this is the version of the statute applicable to this case.

[11] Because the Court finds that Plaintiff does not have a disability, as defined by the ADA, the Court need not consider

(continued...)

medical impairment qualifies as a disability under the ADA. Case law establishes that the ADA "does not cover every individual with an impairment who suffers an adverse employment action," and that, in order to qualify for relief, the individual must be "disabled" as defined by the statute. <u>Flemmings v. Howard Univ.</u>, 198 F.3d 857, 860 (D.C. Cir. 1999) (citation omitted).

The ADA defines a person with a "disability" as: (1) an individual having a physical or mental impairment that substantially limits one or more major life activities; (2) an individual having a record of such an impairment; or (3) an individual regarded as having such an impairment. 42 U.S.C. § 12102(2)(A-C).[12]

In bringing her claim, Plaintiff relies on the first prong of this statutory definition of "disability." Although the ADA does

_____

[11] (...continued)
whether Plaintiff has satisfied the remaining three elements necessary to establish a prima facie case of discrimination.

[12] Effective January 1, 2009, the ADA was amended to alter the definition of "disability." <u>See</u> ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Specifically, the amendments eliminated the limitations imposed by the Supreme Court in <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 122 S. Ct. 681 (2002), and <u>Sutton v. United Air Lines</u>, 527 U.S. 471, 119 S. Ct. 2139 (1999). Defendant contends that the pre-amendment definition of "disability" should apply because the ADA Amendments Act is not to be applied retroactively. Def.'s Mot. 3 n. 1. <u>See</u> <u>Lytes</u>, 572 F.3d at 940 ("Congress clearly indicated the statute would apply only from January 1, 2009 forward."). Because Plaintiff does not oppose Defendant's argument, the Court will look to the definition of "disability" in effect at the time of the alleged discrimination.

not provide guidance on the meaning of the terms "substantially limits" and "major life activities," the Supreme Court has ruled that they should be interpreted "strictly to create a demanding standard for qualifying as disabled." Toyota, 534 U.S. at 197. In Toyota, the Supreme Court, relying heavily on the EEOC Regulations[13] implementing the ADA, 29 C.F.R. § 1630.2, also provided a framework for evaluating whether an impairment satisfies these requirements. Id. at 193-98.

### a. Does Plaintiff's Impairment Substantially Limit One or More Major Life Activities?

Under the EEOC Regulations, a "disability" qualifies as "substantially limiting" if the disabled individual is "'[u]nable to perform a major life activity that the average person in the general population can perform'" or is "'[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" Id. at 195-96 (quoting 29 C.F.R. § 1630.2(j)).

---

[13] In Toyota, the Supreme Court noted that the "persuasive authority of the EEOC Regulations is less clear [than the regulations interpreting the Rehabilitation Act]" as "no agency has been given the authority to issue regulations interpreting the term 'disability' in the ADA." 534 U.S. at 194. However, because the parties had expressly accepted the Regulation's validity, the Court construed the ADA in light of those Regulations. Id. As in Toyota, the parties in this case have not challenged the validity of the EEOC Regulations.

In deciding whether an individual is "substantially limited," the court must consider:(1) "'[t]he duration or expected duration of the impairment;'" (2)"'[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment;'" and (3) "'[t]he nature and severity of the impairment.'" Id. at 196 (quoting 29 C.F.R. § 1630.2(j)) (alterations in original).

"Major life activities" are defined as those "that are of central importance to daily life." Id. at 197. Such activities include standing and walking, amongst others. See id.; Haynes v. Williams, 279 F. Supp. 2d 1, 9-10 (D.D.C. 2003); 29 C.F.R. § 1630.2(I).

Plaintiff has clearly established, and Defendant does not challenge, that her plantar fasciitis was a medical impairment "of central importance to daily life," namely, her ability to stand and walk. However, for several reasons, Plaintiff has failed to present any evidence demonstrating that this medical impairment substantially limited her in performing these major life activities.

### i. Was Plaintiff's Impairment Temporary or Long-Term?

Plaintiff has not shown that her medical impairment was permanent or long-term in nature. Her impairment began in August/September 2007 and lasted until "at least April 2008." Plaintiff's Opp'n 11. Given that "[t]he relevant time for assessing

a claim of disability is when [the] accommodation [was] requested,"
Lytes, 527 F. Supp. 2d at 61 (citation omitted), Plaintiff
presents no evidence that her impairment was expected to be
anything but temporary when she requested a transfer to the Lanham
headquarters in January/February 2008 or that her impairment in
fact continued for a substantial period beyond that point.[14]
Moreover, her unequivocal sworn testimony was that she would have
been able to return to work some time in April 2008 if she had
obtained new employment. Def. Ex. 1 - Deposition of Quintell
Etheridge ("Etheridge Depo."), Tr. 187:6-188:17 (Sept. 3, 2010)
[Dkt. No. 16-1]. See Pollard v. High's of Baltimore, Inc., 281 F.3d
462, 471 (4th Cir. 2002) (holding that plaintiff's immediate re-

---

[14] For several reasons, the undisputed evidence demonstrates
that Plaintiff's impairment was neither expected to be long-term or
permanent, nor did it turn out to be long-term or permanent. First,
medical evaluations from Dr. Powell conducted during Plaintiff's
FMLA leave prescribe a course of treatment for Plaintiff's
impairment that limited her walking and standing activities for
only a temporary period. See Plaintiff Ex. 4 - Nov. 30, 2007, Dec.
21, 2007, and Jan. 11, 2008 Medical Evaluations of Quintell
Etheridge (Oct. 7, 2010) [Dkt. No. 19-2]("She is to be off weight
bearing for 72 hours and has been advised to limit weight bearing
for not less than 21 days."). Second, in her Complaint, Plaintiff
alleged that "[b]y early February . . . her physician advised [her]
that she could return to work provided she was placed 'on light
duty' with a minimum amount of walking and standing." Compl. ¶ 9.
This fact sheds further doubt on the claim that Plaintiff's major
life activities were substantially limited when she requested
transfer to the Lanham headquarters. Finally, Plaintiff provides no
specific evidence that her impairment limited any major life
activities after April 2008. At most, she raises an unsubstantiated
claim that since April 2008 she experienced "chronic recurring pain
as a permanent effect of her plantar fasciitis." Plaintiff's Opp'n
12 (internal quotations and citation omitted).

employment elsewhere, after termination by defendant, "belie[d] the assertion that she was 'disabled' within the ADA's definition or that her impairment was anything other than temporary during the time of her employment [with] [Defendant]").

While Plaintiff does not provide any authority establishing that an impairment such as hers, lasting at most for 8 months, qualifies as a disability under the ADA, there is ample case law establishing that Plaintiff's medical impairment unequivocally qualifies only as "temporary" or "short-term."[15] See Duncan v. Harvey, 479 F. Supp. 2d 125, 131 (D.D.C. 2007)("Courts are seemingly unanimous in the view that impairments whose effects last less than one year are insufficient to demonstrate a substantial limitation on a major life activity")(see cases cited therein); Lester v. Natsios, 290 F. Supp. 2d 11, 24-25 (D.D.C. 2003) (holding that plaintiff who suffered from hypertension from late 1994 until

_____

[15] Plaintiff attempts to overcome the temporary nature of her medical impairment by describing the healing process as "complicated by [her] chronic, permanent medical condition, diabetes." Plaintiff's Opp'n 12. However, the fact that Plaintiff's claimed disability is complicated by a long-term, permanent medical problem, such as diabetes, does not necessarily render that claimed disability permanent and long-term in nature. Similarly, Plaintiff's claim that her impairment "took a great deal of time to heal and, given her diabetes, could have surely become a debilitating condition if not allowed to heal properly," id., does not, as a legal matter, support a finding that she has established by a preponderance of the evidence that her impairment was long-term or permanent under the ADA. Plaintiff provides no authority indicating otherwise.

sometime in 1995 did not qualify as an individual with a "disability" under the Rehabilitation Act, a statute analogous to the ADA).[16]

### ii. Was Plaintiff Severely Impacted by Her Impairment?

Plaintiff has failed to show that, despite the temporary nature of her injury, she was severely impacted by her impairment. Adams v. Citizens Advice Bureau, 187 F.3d 315, 316 (2d Cir. 1999) (per curiam). To establish that one is severely limited in a major life activity, plaintiff must do more than merely submit evidence of a medical impairment. Toyota, 534 U.S. at 198. Because determination of the existence of a disability under the ADA must be made on a "case-by-case basis," those claiming the Act's protection must provide evidence demonstrating "that the extent of the limitation in terms of their own experience . . . is substantial." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567, 119 S. Ct. 2162 (1999).

In this case, Plaintiff's proffered evidence regarding the limitations she experienced because of her disability relate almost exclusively to the period beginning on the first day of her FMLA leave, November 21, 2007, and lasting until some time in

---

[16] See Samuels v. Kan. City Mo. Sch. Dist., 437 F.3d 797, 802 (8th Cir. 2006) (holding that "temporary impairments with little or no long-term impact are not disabilities" under the ADA); Pollard, 281 F.3d at 467-69 (holding that nine-month period of recovery from surgery was insufficient to constitute a permanent or long-term impairment under the ADA).

January/February 2008.[17] Amongst these factual allegations, the bulk of Plaintiff's evidence consists of medical evaluations from her doctor, demonstrating that she suffered from a medical impairment and providing information about her course of treatment, but giving no detail about how her medical impairment specifically limited her major life activities of walking and standing. The only specific fact offered by Plaintiff to demonstrate that she was substantially impacted by her impairment related to restrictions on her ability to attend church and perform her assigned church duties. Plaintiff's Opp'n 3; Etheridge Depo. Tr. 159:13-21.[18]

_____

[17] Plaintiff has provided the Court with only one medical report for the period after January/February 2008. See Plaintiff Ex. 7 - Mar. 18, 2008 Progress Report for Quintell Etheridge from Dr. Muhammad Khalid (Oct. 7, 2010) [Dkt. No. 19-4]. All other evidence pertaining to Plaintiff's impairment during this period is limited to work excuse notes provided to FedChoice by Dr. Powell and do not provide any detailed information regarding Plaintiff's condition.

[18] Plaintiff, in her Counter-Statement of the Facts in Dispute, states that "[D]uring this initial period (Nov. 21, 2007 to Dec. 2007), (Plaintiff's) symptoms actually got worse and Ms. Etheridge was unable to walk other than to care for her personal daily care and to go to her medical appointments. Her initial attempts to be driven to Sunday church services by her husband proved impossible. By December 21, 2007, Ms. Etheridge's doctor advised her to avoid all weight bearing activity for 72 hours and to limit weight bearing activities. . . ." Plaintiff's Stmt. of Facts ¶ 27 (citations omitted).

Plaintiff's deposition testimony includes the following:

> Q.   Okay.  And what, if anything, had you
>      done between . . . December 21, 2007, and
>      January 11, 2008, in terms of your normal
>      activities?  Were they the same as you
>                                    (continued...)

Other than these evaluations and her deposition testimony, Plaintiff provides only general statements regarding the degree to which her medical impairment limited her walking and standing. <u>See</u> Plaintiff's Opp'n 3.

Because Plaintiff has failed to provide specific evidence to substantiate her claim or "otherwise [to] describe the degree to which she is limited with any reasonable specificity," <u>Thompson v. Rice</u>, 422 F. Supp. 2d 158, 174 (D.D.C. 2006), the Court concludes that her temporary impairment did not substantially limit her in performing two major life activities, standing and walking, as defined by the ADA. The Court, therefore, **grants** Defendant's motion for summary judgment on Plaintiff's ADA claim.

---

[18](...continued)
            previously described?

    A.   No.

    Q.   What changed?

    A.   I did try going back to church. I
         couldn't do my duties at church because I
         was a nurse and ushered . . . ."
Etheridge Depo., Tr. 159:13-21.

The deposition testimony, which was submitted by Defendant, does not contain the rest of Plaintiff's response.

Thus, it is clear that Plaintiff's facts, assuming they are accurate, establish at most that she was impacted by her impairment for a period of three to four months.

## C.    FMLA Claim

Plaintiff alleges that she was unlawfully terminated in violation of the FMLA, because Defendant "interfered" with her rights under the statute by misleading her with regard to the expiration of her leave, "refus[ing] her initial request for an accommodation to be transferred to the Lanham branch. . . . [,][and] intentionally blind-sid[ing] [her] before she could again request an extension of FMLA leave as an accommodation." Plaintiff's Opp'n 14. In response, Defendant argues that Plaintiff was terminated, in compliance with the FMLA, because she had exhausted her FMLA leave and had represented to Defendant, after her leave had expired, that she was unable to return to work. Def.'s Reply 5. Defendant also argues that Plaintiff's claim that the FMLA entitled her to a reasonable accommodation for her disability is misplaced, as the FMLA does not require an employer to provide a reasonable accommodation to an employee. Id. at 6.

### 1.    Defendant Did Not Interfere with Plaintiff's FMLA Rights

The FMLA entitles an eligible employee to twelve weeks of leave during any twelve-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). The FMLA, however, is a "balancing act, an attempt to provide employees with some leave, a reasonable leave, without completely ignoring the legitimate demands of the workplace." Miller v. Personal-Touch

of Va., Inc., 342 F. Supp. 2d 499, 515 (E.D. Va. 2004) (internal quotations and citation omitted), aff'd, 153 Fed. Appx. 209 (4th Cir. 2005)(per curiam). Consequently, once FMLA leave has expired and the employee has not returned to work, the employer is under no responsibility to restore the employee to her prior position. Jackson v. Wilkes Artis, 565 F. Supp. 2d 148, 152 (D.D.C. 2008).

Under the FMLA, an employer may be held liable for "interfering" with an employee's rights under the Act. 29 U.S.C. § 2615(a)(1). Such interference may occur if the employer fails to provide written notice to the employee that her leave is designated as FMLA leave. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 88-90, 122 S. Ct. 1155 (2002). According to the FMLA Regulations, an employer provides proper notice where, amongst other requirements, it gives written documentation to the employee designating her leave as paid or unpaid and indicating whether it qualifies as FMLA leave. 29 C.F.R. § 825.300 (b). Where proper notice is not given, an interference claim is actionable if the employee can demonstrate that she has suffered prejudice, which occurs only when the employee has lost compensation or benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status remediable through equitable relief. Roseboro v. Billington, 606 F. Supp. 2d 104, 108 (D.D.C. 2009).

In light of this authority, Plaintiff has failed to demonstrate how Defendant "interfered" with her rights under the FMLA. It is undisputed that Plaintiff was entitled to and did in fact receive sixteen weeks of FMLA leave, as required by D.C. law. Def.'s Stmt. of Facts ¶ 4; Plaintiff's Stmt. of Facts ¶ 4. Plaintiff also does not challenge the fact that Defendant provided her with proper written notice on the first day of her leave, indicating that she was being granted FMLA leave and advising her of her FMLA rights. Def.'s Stmt. of Facts ¶ 4; Plaintiff's Stmt. of Facts ¶ 4. Plaintiff does not deny that during her leave she completed two FMLA certification forms, and received numerous pieces of correspondence from Defendant reminding her that her FMLA leave and her short-term disability ran concurrently and that she was required to submit a physician's certificate indicating when she could return to work. Def. Ex. 6 - Dec. 11, 2007 and Jan. 31, 2008 Physician Certification for Family and Medical Leave (Sept. 3, 2010) [Dkt. No. 16-1]; Dec. 5, 2007 and Jan. 24, 2008 FedChoice Letters to Quintell Etheridge. Finally, Plaintiff does not dispute that she was unable to return to work on March 12, 2008, when her sixteen weeks of FMLA leave expired.

These facts firmly establish that Defendant did not interfere with Plaintiff's rights under the FMLA. Although Plaintiff alleges that Defendant was under an obligation to notify her of the

impending expiration of her FMLA leave, she provides no authority supporting that claim.[19]

### 2. Plaintiff Was Not Entitled to a Reasonable Accommodation Under the FMLA

With regard to Plaintiff's accommodation claim, as Defendant correctly notes, Plaintiff has attempted to read the ADA's reasonable accommodation provision into the FMLA. The FMLA contains no such accommodation requirement and, in fact, an employer's obligations under the FMLA are wholly distinct from its obligations to provide a reasonable accommodation under the ADA. See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002) (affirming district court jury instruction that FMLA "does not require an employer to provide a reasonable accommodation to an employee"); Tardie v. Rehab. Hosp. of R.I., 168 F.3d 538, 544 (1st Cir. 1999)(noting that, unlike ADA, FMLA Regulations do not contain "reasonable accommodation language"). Having provided no legal grounds for this argument, Plaintiff's accommodation argument must fail.

_____

[19] Even if Plaintiff was correct that Defendant was under an obligation to notify her that her leave was set to expire, her claim that Defendant thereby interfered with her FMLA rights would still fail as she was unable to return to work after her FMLA leave expired on March 12, 2008. See Mar. 27, 2008 Work Excuse Note. As the Supreme Court has held, an employee who cannot return to work at the end of her FMLA leave period cannot demonstrate "any real impairment of [her] rights and resulting prejudice" under the statute. Ragsdale, 535 U.S. at 90. Consequently, any alleged failure by Defendant to provide Plaintiff with adequate notice cannot form the basis of an actionable interference claim under the FMLA. Miller, 342 F. Supp. 2d at 515.

Consequently, because Plaintiff has not presented a valid cause of action under the FMLA, the Court **grants** Defendant's summary judgment motion with regarding to Plaintiff's FMLA claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment under Rule 56 is **granted in its entirety**.  An Order will accompany this Memorandum Opinion.


June 2, 2011                          /s/_____
                                      Gladys Kessler
                                      United States District Judge